IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| SHAWNDA Y. MARTIN KING, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 5:25-CV-181-H-BV |
| | § | |
| LUBBOCK INDEPENDENT SCHOOL DISTRICT, | § | |
| | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pro se Plaintiff Shawnda Y. Martin King asserts several claims against her former employer, Lubbock Independent School District (LISD), based on events surrounding her demotion and termination as principal of Talkington School for Young Women Leaders. LISD moves to dismiss all claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that the Court lacks jurisdiction over King's state-law tort claims and that all other claims are barred by res judicata. Dkt. No. 25. LISD also argues that King has not alleged sufficient facts to state a claim. *Id.* King and LISD have also filed motions for summary judgment. Dkt. Nos. 45, 66. For reasons explained below, the undersigned **RECOMMENDS** that the United States District Judge grant the motion to dismiss, Dkt. No. 25, and dismiss King's amended complaint and all claims therein. Dkt. No. 20. Considering this recommendation, the district judge should deny all other pending motions as moot.

**1. This is King's second lawsuit alleging that LISD discriminated and retaliated against her.**

On February 21, 2024, King sued LISD and several LISD employees, alleging that her demotion from her position as principal of Talkington was discriminatory and retaliatory and that LISD subjected her to a hostile work environment. *King v. Lubbock Indep. Sch. Dist.* (*King I*), No. 5:24-CV-058-H-BV, 2025 WL 2994741, at *1 (N.D. Tex. July 18, 2025), *R. & R. adopted by* 2025 WL 2715320 (N.D. Tex. Sep. 24, 2025). The Court dismissed all King's claims and entered judgment against her on September 24, 2025. *King I*, 2025 WL 2715320, at *5.

On August 25, 2025—approximately one month before the Court dismissed King's first case—she filed this lawsuit. Dkt. No. 1. LISD filed its first motion to dismiss on September 17, 2026. Dkt. No. 14. King then amended her complaint as a matter of course, and her amended complaint remains the operative pleading. Dkt. No. 20. LISD filed another motion to dismiss on October 24, 2026. Dkt. No. 25. King and LISD have both filed motions for summary judgment. Dkt. Nos. 45, 66.

***King I***

The Court first recounts the relevant facts of *King I*. In May 2023, LISD hired King as principal of Talkington. *King I*, 2025 WL 2994741, at *4. However, within a few weeks, LISD learned that King lacked certification as a principal, which is required by Texas law to serve as a principal of a public school. *Id.* at *5. King refused give up the position, so LISD placed her on paid administrative leave and removed her as principal of Talkington. *Id.* On June 6, Kathryn Rollo, LISD Superintendent, "notified

Talkington families that King would not be assuming the principalship as previously announced." *Id.* (citation omitted). Thereafter, Rollo and King entered an agreement that allowed King "to retake the administrator exam by July 26, 2023," and if she successfully obtained her principal certification, "an administrative reassignment would be made at the sole discretion of Rollo with approval of the Board of Trustees." *Id.* (brackets omitted). "[I]f King failed to obtain certification, she would have the option to take a classroom teaching position at the salary [commensurate] of a teacher." *Id.* (internal quotation marks and citation omitted). King filed her first grievance eleven days later, complaining about her removal as principal. *Id.* On July 25, 2023, King took and failed the exam, "as she had three other times between 2013 and 2014." *Id.* She was reassigned to an interventionist position at a different elementary school. *Id.*

On September 5, 2023, King reported for the interventionist position, but she refused to sign a teacher term contract. *Id.* at *6. Then, ten days later, "King applied for, and LISD granted her, twelve weeks' leave under the Family Medical Leave Act (FMLA)." *Id.* King filed her second grievance on September 19, 2023, complaining that her assignment as a teacher was "contrary to applicable law and district policy, arbitrary and capricious, without justification, and constituted an unacceptable working condition." *Id.* (brackets omitted). She "argued that her administrator contract for the Talkington principalship was still valid, and LISD was required to employ her in the same professional capacity as Campus Administrator, with commensurate compensation and benefits." *Id.* (internal quotation marks and brackets omitted). King's "grievances were unsuccessful through multiple levels of review and appeal." *Id.* In addition, "[w]hile on

FMLA leave, King exhausted her paid leave, so LISD docked her pay on the January through March 2024 paychecks to account for her unpaid leave." *Id.*

On February 22, 2024—one day after King filed her first lawsuit—the LISD Board of Trustees held a meeting and terminated King's 2023-2024 contract for voidness because she lacked a principal certification. *Id.* King questioned the validity of the termination, so on May 9, 2024, the Board of Trustees again declared King's contract void. *Id.*

In the original suit, King asserted the following claims:

> (1) race and sex discrimination, retaliation, and hostile work environment under Title VII; (2) "institutional discrimination"; (3) discrimination and retaliation under 42 U.S.C. § 1981; (4) violation of the Equal Pay Act of 1963 (EPA); (5) violations of the Family Medical Leave Act (FMLA); (6) violation of Texas Labor Code § 21.053; and (7) Texas state-law claims for breach of contract, defamation, fraud, and intentional infliction of emotional distress (IIED).

*Id.* at *1.

**<u>King's Allegations in this Lawsuit</u>**

The facts forming the basis of the instant lawsuit are similar. King claims that between April and May 2023, LISD officials encouraged her to apply for the principal position at Talkington, which she did. Dkt. No. 20 at 15–16.[1] On May 11, 2023, LISD offered her the position as principal, and King accepted. *Id.* at 18. Subsequently, LISD informed King that she needed to pass the principal test to stay on as an LISD administrator, or she could resign as principal and take a non-principal position with

[1] Page citations to King's pleadings refer to the electronic page number assigned by the Court's electronic filing system.

LISD. *Id.* at 20–21. King refused to resign, and she filed a grievance. *Id.* She failed the principal certification test and was assigned to an interventionist position. *Id.*; Dkt. No. 20-4 at 24.

On May 9, 2024, King received a notice that her administrator contract would not be renewed because she failed to obtain her principal certification test, and because she refused to sign a teacher contract, she would be terminated on May 24. Dkt. Nos. 20 at 20–21; 20-4 at 24–26. King does not dispute that she lacked a principal certification. *Id.* at 14. But according to King, LISD knew that she lacked the requisite certification when it hired her as a principal because her application did not affirmatively represent that she had the certification. *Id.* (asserting that LISD's "action of hiring [King when it] knew [she] was unqualified and then firing her for that reason is pretextual illegal termination").

King's amended complaint is disorganized and factually disjointed, making it difficult to parse the precise claims and allegations. *See* Dkt. No. 20. Nevertheless, the undersigned understands King as asserting the following claims: (1) state-law tort claims for libel, fraud, IIED, and harassment; (2) promissory estoppel; (3) discrimination and retaliation under Title VII and 42 U.S.C. § 1981; (4) violations of the Fair Labor Standards Act (FLSA), Texas Whistleblower Act, Texas Labor Code, Texas Penal Code, and Texas Human Resources Code; and (5) violations of the First and Fifth Amendments, presumably under 42 U.S.C. § 1983. *Id.* at 13.

2. **LISD filed a motion to dismiss, and the parties have moved for summary judgment.**

**LISD's Motion to Dismiss**

LISD moves to dismiss King's claims under Rules 12(b)(1) and 12(b)(6). Dkt. No. 25. It argues that the Court lacks jurisdiction over King's state-law tort claims because LISD is immune from suit under the Texas Tort Claims Act. Dkt. No. 26 at 7–8, 11–12, 14–16. LISD also asserts res judicata because King's allegations here are identical to those in her first case, and she "is simply attempting to relitigate her employment issue while at the District." *Id.* at 12. Moreover, LISD argues that King fails to state a claim under Rule 12(b)(6). *See id.* at 8–28. Thus, all of King's claims must be dismissed.

King does not directly address LISD's res judicata argument in her response, but she argues in her amended complaint that "[t]his complaint is not about a principal position nor a duplicate to a previous complaint," and that, instead, because she asserts new claims—i.e., promissory estoppel, "pretext" discrimination, libel, etc.—the claims are not precluded. Dkt. No. 20 at 48. She also appears to argue that the relation-back doctrine prevents the application of claim preclusion. Dkt. No. 33-1 at 2–3.

**LISD's and King's Motions for Summary Judgment**

In King's motion for summary judgment (MSJ)—which appears largely a reiteration of her amended complaint—she asserts that "she has proven that there is no genuine dispute as to any material fact." Dkt. No. 45-1 at 28. She says this despite her argument in response to LISD's MSJ that many issues remain in dispute. Dkt. No. 71.

LISD argues that it is entitled to summary judgment on all of King's claims because King was not qualified to be a principal because lacks the necessary certification, and because she refused to sign a teacher contract, there was no contract to renew, resulting in termination. Dkt. No. 66 at 4–6.

### 3. The Court considers the applicable legal standards.

__Rule 12(b)(1)__

Rule 12(b)(1) authorizes a party to seek dismissal due to a lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The party asserting jurisdiction bears the burden of demonstrating its existence. *Id.* (citation omitted). "A court may dismiss under Rule 12(b)(1) on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* at 217–18 (citation and internal quotation marks omitted). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id.* at 218 (citation omitted).

__Rule 12(b)(6)__

To survive a Rule 12(b)(6) motion, a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In considering 12(b)(6) motions, courts must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff, but mere conclusory allegations need not be credited. *Twombly*, 550 U.S. at 555 (explaining that a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 520 (5th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678) (stating that courts accept all well-pleaded facts as true, but " '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' cannot establish facial plausibility"). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations omitted).

"[A] district court may take into account documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (per curiam); *see id.* (recognizing that "[a] court may take judicial notice of the record in prior related proceedings") (brackets and citation omitted).

**Rule 56**

Where the pleadings and evidence show that no genuine issue of material fact exists, the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ.

P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he substantive law will identify which facts are material." *Id.* The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 824 (5th Cir. 2022) (explaining that the movant initially "bears the burden of demonstrating that there is no genuine dispute of material fact"). When the non-movant bears the burden of proving such material facts at trial, movants may satisfy their burden by either affirmatively showing the non-movant's inability to establish such material facts or "merely demonstrat[ing] an absence of evidentiary support in the record for the non-movant's case." *Wesley v. Gen. Drivers, Warehousemen & Helpers Loc. 745*, 660 F.3d 211, 213 (5th Cir. 2011) (quoting *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010)); *accord Owens*, 33 F.4th at 824.

If the movant meets that burden, the non-movant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted); *see* Fed. R. Civ. P. 56(c). "To satisfy this burden," the non-movant is "required to identify specific evidence in the record, and to articulate the 'precise manner' in which that evidence support[s] [his] claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (citation omitted).

Courts must view all facts and inferences in the light most favorable to the non-movant and resolve any disputed material facts in the non-movant's favor. *Anderson*, 477 U.S. at 255; *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). But "a [non-movant] cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). A plaintiff "must allege facts specifically focusing on the conduct of [the defendant] which caused his injury." *Wicks v. Miss. State Emp. Servs.*, 41 F.3d 991, 995 (5th Cir. 1995). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment . . . ." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992). Importantly, this Court must not make credibility determinations or weigh evidence in ruling on such a motion. *Anderson*, 477 U.S. at 254–55.

**4. King does not include the EEOC charge in her complaint, but the Court considers all her allegations.**

"Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court, meaning a plaintiff must file a timely charge with the EEOC and receive a statutory notice of right to sue." *Stingley v. Watson Quality Ford, Jackson, MS*, 836 F. App'x 286, 291 (5th Cir. 2020) (per curiam) (brackets and citation omitted). "The universe of claims a plaintiff can properly advance in a Title VII suit is set by the contours of the administrative process." *Id.* That is, a plaintiff's lawsuit is limited to the scope complained in the charge and the EEOC's resulting investigation.

*See id.* "Failure to exhaust is not a procedural 'gotcha' issue" but is instead "a mainstay of proper enforcement of Title VII remedies." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 272 (5th Cir. 2008).

King received a second-right-to-sue letter from the EEOC on May 27, 2025. Dkt. No. 20 at 14. But she does not include the charge in her complaint, so the undersigned cannot determine whether her claims in this suit exceed the scope of her EEOC charge. *See* Dkt. No. 20-4 at 42–43 (including EEOC determination and notice of rights but not including charge). However, exhaustion is not jurisdictional and is subject to waiver and estoppel. *See Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 168–69 (5th Cir. 2018); *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 307 (5th Cir. 2018) ("Failure to exhaust is an affirmative defense that should be pleaded."). LISD has therefore waived any exhaustion argument, and the undersigned considers all of King's allegations in her amended complaint, regardless of whether she exhausted them.

## 5. The district judge should grant LISD's motion to dismiss.

### A. The Court lacks jurisdiction over King's state-law tort claims under the Texas Tort Claims Act.

The Court now turns to LISD's motion to dismiss, Dkt. No. 25, and first addresses whether it lacks jurisdiction over King's state-law tort claims including libel, fraud, and IIED.[2] Dkt. No. 20 at 13. King also asserts a harassment claim. *Id.*

---

[2] The Fifth Circuit has "affirmed dismissals of state law claims under the TTCA raised in motions to dismiss under both Rule 12(b)(1) and Rule 12(b)(6)." *Wells v. Tex. Tech Univ.*, No. 24-10518, 2025 WL 673439, at *6 n.6 (5th Cir. Mar. 3, 2025) (citing cases). The undersigned understands LISD as moving for dismissal of King's state-law tort claims under Rule 12(b)(1). *See* Dkt. No. 26 at 7, 12, 15.

Texas has provided limited consent to suit through the Texas Torts Claim Act (TTCA), which creates a limited waiver of sovereign immunity. Tex. Civ. Prac. & Rem. Code §§ 101.001–.109. "It is well-established that school districts, as governmental entities, are generally immune from suit under the [TTCA]," except for claims involving the operation and use of motor vehicles. *Jones v. Peaster Indep. Sch. Dist.*, No. 4:23-CV-00969-P, 2024 WL 1053302, at *2 (N.D. Tex. Mar. 11, 2024) (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 656 (Tex. 2008)); *see* Tex. Civ. Prac. & Rem. Code § 101.051. King's state-law tort claims do not involve such use, so her claims for libel, fraud, and IIED should be dismissed for lack of subject-matter jurisdiction under the TTCA. *See Farshid ex rel. E.K. v. Allen Indep. Sch. Dist. ex rel. Bd. of Trs.*, 688 F. Supp. 3d 391, 398 (E.D. Tex. 2023) (holding that state-law claims against school district for battery, false imprisonment, gross negligence, IIED, and negligence were barred by the TTCA), *aff'd*, No. 23-40532, 2024 WL 3082335 (5th Cir. June 21, 2024).

Regarding King's allegations of harassment, "Texas law does not recognize a separate and independent cause of action for harassment." *Van Gilder v. Van Gilder*, No. 03-18-00258-CV, 2018 WL 3151000, at *3 (Tex. App.—Austin June 28, 2018, no pet.). This claim should therefore be dismissed.

**B. Some of King's claims are barred by res judicata.**

Turning to King's other claims, she briefly argues that the relation-back doctrine prevents the application of res judicata here. Dkt. No. 33-1 at 2–3. "The 'relation back' doctrine provides generally that in some situations, an amended pleading may be

considered to have been filed at the time of the original pleading." *Wright v. Dollar Tree Stores, Inc.*, No. 3:14-CV-01472-N, 2014 WL 11456816, at *2 (N.D. Tex. Sep. 16, 2014) (citing Fed. R. Civ. P. 15(c)). "Thus, the relation back doctrine may allow a claim to escape an otherwise applicable limitations period." *Id.* It is unclear how the relation-back doctrine applies here, considering that LISD does not argue that King's claims are barred by the statute of limitations. *See* Dkt. No. 26. Instead, LISD argues that King has asserted her claims before, and thus, they are barred by claim preclusion. *See id.*

"Claim preclusion, or *res judicata,* bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004) (citation omitted). Res judicata is typically asserted as an affirmative defense in a responsive pleading. Fed. R. Civ. P. 8(c)(1). A court may also raise res judicata *sua sponte* "in the interest of judicial economy where both actions were brought before the same court." *Mowbray v. Cameron Cnty.*, 274 F.3d 269, 281 (5th Cir. 2001) (citation omitted). "[I]n fact, if all relevant data and legal records are before the court, the demands of comity, continuity in the law, and essential justice *mandate* judicial invocation of the principles of res judicata." *Pie Dev., L.L.C. v. Pie Carrier Holdings, Inc.*, 128 F.4th 657, 662 (5th Cir. 2025) (per curiam) (internal quotation marks and citation omitted).

A careful review of the pleadings shows that LISD raises the issue of res judicata in both its motion to dismiss and answer, which were filed the same day. *See* Dkt. Nos. 14, 16. While LISD did not explicitly use the words "res judicata" in its answer, it was not required to do so. *See* Fed. R. Civ. P. 8(e) (establishing that "[p]leadings must be

construed so as to do justice"); *Starcraft Co., A Div. of Bangor Punta Operations v. C.J. Heck Co. of Tex., Inc.*, 748 F.2d 982, 990 n.11 (5th Cir. 1984) (explaining that a defendant is "not required to state certain magic words in order to assert a successful defense" but is "only required to give [plaintiff] fair notice of the nature of its assertions"). Here, LISD clearly asserts claim preclusion—i.e., that most of King's claims were raised either in her complaint or her motion for summary judgment in *King I.* Dkt. No. 16 at 2. Further, considering the allegations in King's amended complaint compared to those in her first case and the fact that both cases were filed in this Court, the Court would *sua sponte* consider whether King's claims are precluded by the doctrine of res judicata even if LISD had not raised it as an affirmative defense.

Dismissal based on claim preclusion is proper if: "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005)).

The first element is easily satisfied. In her prior case, King sued LISD along with several LISD employees, and LISD is the only Defendant in this action. Dkt. No. 20; *King I*, 2025 WL 2994741, at *1. The second element is also easily satisfied, as this Court is one of competent jurisdiction. This Court dismissed King's prior claims with prejudice and entered a final judgment against her, thus satisfying the third element. *See King I*, 2025 WL 2715320, at *5 (granting defendants' MSJ, denying King's cross-MSJ, and dismissing King's claims with prejudice).

The fourth element—whether the same claim or cause of action is present in both actions—is determined by the "transactional test." *Singh*, 428 F.3d at 571. "Under that test, the preclusive effect of a prior judgment extends to all rights the original plaintiff had 'with respect to all or any part of the transaction, or series of connected transactions, out of which the original action arose.'" *Petro-Hunt*, 365 F.3d at 395–96 (brackets omitted) (quoting Restatement (Second) of Judgments, § 24)). "The nucleus of operative facts, rather than the type of relief requested, substantive theories advanced, or types of rights asserted, defines the claim." *United States v. Davenport*, 484 F.3d 321, 326 (5th Cir. 2007).

> What grouping of facts constitutes a "transaction" or a "series of transactions" must "be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties" expectations or business understanding or usage."

*Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 313 (5th Cir. 2004) (quoting *Petro-Hunt*, 365 F.3d at 395–96).

Many of King's claims are based on the same underlying facts in her first lawsuit. She describes the same events discussed in her first lawsuit surrounding the circumstances of her hiring as principal of Talkington and the voiding of her administrator contract because she was not certified as a principal. *See King*, 2025 WL 2715320, at *4 n.2 (observing that *King I* and this case "both arise from the same underlying conduct"). Although King filed her first lawsuit the day before the LISD Board meeting in which her administrator contract was voided, she improperly raised

new claims and allegations based on new facts in her March 2025 cross-MSJ, many of which the Court considered and dismissed. *See King I*, 2025 WL 2994741, at *20–27.

The Fifth Circuit has "held that 'subsequent wrongs' by a defendant constitute new causes of action and that 'a Title VII plaintiff is free to bring successive actions, claiming in each that his employer has taken retaliatory actions against him more recent than the prior lawsuit.'" *Davis*, 383 F.3d at 314 (brackets omitted) (quoting *Blair v. City of Greenville*, 649 F.2d 365, 368 (5th Cir. 1981) and *Dawkins v. Nabisco, Inc.*, 549 F.2d 396, 397 (5th Cir. 1977)). However, where the claims alleged in successive lawsuits "originate from the same continuing course of allegedly discriminatory conduct," the claims will be considered the same and the res judicata bar will apply. *Id.*

It is difficult to tell whether all of King's claims here share a "nucleus of operative facts" with her claims in *King I* because her pleadings are disorganized, scattered, and often conclusory. *See* Dkt. No. 20. But King discusses events occurring both before *and* after *King I* concluded, and at least some of the claims in this suit are barred by claim preclusion, as discussed further herein.

**C. King's promissory estoppel claim is barred by res judicata, and she fails to state a claim.**

King asserts a promissory estoppel claim based on LISD inviting her to interview for the principal position, extending an offer, and then removing her from the position weeks later. Dkt. No. 20 at 16–21, 26, 31–32. She also indicates that LISD officials made "promises" by encouraging King to apply for the position, and Rollo made a promise by saying that she was looking forward to working with King shortly after she

accepted. *Id.* at 16. King asserted a fraudulent inducement claim based on similar facts in her first lawsuit. *See King I*, 2025 WL 2994741, at *4–7, *26 (recommending dismissal of King's fraudulent inducement claim based on her allegation "that LISD induced her into contracting for the Talkington principalship"). Moreover, this claim focuses on details specifically surrounding King's hiring in May 2023, meaning she could have brought this claim when she filed her first lawsuit. Thus, King's promissory estoppel claim is barred by res judicata.

Even without the res judicata concern, this claim would be subject to dismissal. Assuming *arguendo* that the claim can even be raised—*see Anzaldua v. TitanLiner, Inc.*, No. 3:19-CV-01933-E, 2020 WL 1236466, at *5 (N.D. Tex. Mar. 13, 2020) (recognizing that "[t]here is significant disagreement among Texas courts as to whether promissory estoppel is available to plaintiffs in the employment context")—"[p]romissory estoppel is an equitable exception used to avoid a statute of frauds defense." *Lotito v. Knife River Corp.-S.*, 391 S.W.3d 226, 227 (Tex. App.—Waco 2012, no pet.). "To establish promissory estoppel, a plaintiff must establish: (1) a promise; (2) foreseeability of reliance on the promise by the promisor; and (3) substantial detrimental reliance by the promisee." *Gordon v. Bank of Am. Corp. & Green Tree Serv., L.L.C.*, No. 3:15-CV-902-L, 2015 WL 5872659, at *6 (N.D. Tex. Oct. 5, 2015) (citing *Metro. Life Ins. Co. v. Haden & Co.*, 158 F.3d 584, 584 (5th Cir. 1998)). "The reliance must be both reasonable and justified." *Hernandez v. UPS Supply Chain Sols., Inc.*, 496 F. Supp. 2d 778, 784 (W.D. Tex. 2007). "However, Texas law precludes a party from recovering under quantum meruit claims such as promissory estoppel when an express contract between

the parties governs the dispute." *Snow v. Mike Bloomberg 2020 Inc.*, No. 4:20-CV-00490-BP, 2021 WL 1966845, at *5 (N.D. Tex. May 17, 2021), *aff'd sub nom. Hamilton v. Mike Bloomberg 2020, Inc.*, No. 21-10576, 2021 WL 5272218 (5th Cir. Nov. 11, 2021); *see Blackstone Med., Inc. v. Phx. Surgicals, L.L.C.*, 470 S.W.3d 636, 655 (Tex. App.—Dallas 2015, no pet.) (observing that "[t]he promissory estoppel doctrine presumes that no contract exists").

King does not argue that there was no contract. In fact, she indicates that LISD breached its contract with King—an allegation that she made in her previous case. Dkt. No. 20 at 21 (asserting that LISD did not have to terminate her administrative contract because it did not specify a position); *King I*, 2025 WL 2994741, at *23 (summarizing that "King alleges LISD breached a contract when it reassigned her from an assistant principal to a teacher position at a bilingual school"). LISD voided King's administrator contract because the contract required her to have a principal certification. Dkt. No. 20-2 at 48–49, 51–52. Because there was a written employment agreement between King and LISD, King cannot state a promissory estoppel claim.

In addition, it is doubtful whether LISD officials' statements encouraging King to apply and expressing that they looked forward to working with her are "sufficiently specific and definite so that it would be reasonable for [King] to rely on it as a commitment to future action." *Valenzuela v. Bank of N.Y. Mellon*, 811 F. App'x 902, 903 (5th Cir. 2020) (per curiam) (quoting *Ogle v. Hector*, No. 03-16-00716-CV, 2017 WL 3379107, at *2 (Tex. App.—Austin Aug. 2, 2017, pet. denied)). "A promise must . . . be more than speculation of future events, a statement of hope, an expression of opinion, an

expectation, or an assumption." *Xia v. Lina T. Ramey & Assocs.*, No. 3:21-CV-3072-L-BN, 2023 WL 3451292, at *8 (N.D. Tex. Jan. 20, 2023) (quoting *Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 305 (Tex. App.—Dallas 2009, no pet.)), *R. & R. adopted by* 2023 WL 2967422 (N.D. Tex. Apr. 17, 2023), *aff'd sub nom. Xia v. Ramey*, No. 23-10508, 2024 WL 701533 (5th Cir. Feb. 21, 2024). The LISD officials' statements appear to be platitudes and expressions of opinion, rather than definite promises. *See, e.g.*, Dkt. No. 20 at 16.

King indicates that LISD officials made promises by encouraging her to apply, but she does not provide details regarding those interactions. *See* Dkt. No. 20 at 16. Even assuming that those statements were somehow promises, King has still not stated a claim because her reliance was not reasonable. "When the parties' written agreement addresses the substance of the oral statement and contains language precluding reliance on external representations, Texas courts find reliance on subsequent oral promises unreasonable." *Snow*, 2021 WL 1966845, at *5 (quoting *Simpson v. Woodbridge Props., L.L.C.,* 153 S.W.3d 682, 684 (Tex. App.—Dallas 2004, no pet.)).

King's administrator contract, which she attached to her complaint, clearly states that the contract "is conditioned on [her] satisfactorily providing the certification, service records, teaching credentials, and other records and information required by law, the Texas Education Agency, the State Board for Educator Certification, the State Board of Education, or . . . [LISD]." Dkt. No. 20-2 at 48 ¶ 8. The contract also clearly states that "[n]o amendments to this contract shall be binding unless reduced to writing and signed by both parties." *Id.* at 49 ¶ 20. Thus, King's reliance on purported oral "promises"

made before or after signing the contract was unreasonable as a matter of law, and she cannot state a claim. And King has not demonstrated that any reliance was reasonable for another, separate reason—Texas law requires a principal to be certified, and King was not. 19 Tex. Admin. Code § 241.20; *see* Tex. Educ. Code §§ 21.003(a), 21.0031(a)–(b). In sum, even assuming promissory estoppel is a legitimate legal theory, King cannot and does not raise such a claim here.

**D. King's discrimination claims under Title VII and § 1981 are barred by res judicata.**

King complains that LISD discriminated based on her race and sex when it suspended her and placed her on administrative leave, demoted her to an interventionist position, and reduced her salary. Dkt. No. 20 at 45–46. She previously asserted these exact claims in her first lawsuit, so they are barred by res judicata. *King I*, 2025 WL 2994741, at *9–14. And the undersigned recommended dismissal of King's claims raised in her cross-MSJ based on the termination of her contract and employment. *See id.* at *20 (observing that "[t]ermination of the contract and King's employment are adverse employment actions"), *21 (explaining that "[a]s to the administrator contract termination, King was not certified as a principal and therefore could not serve in that capacity, which ultimately resulted in LISD's termination of her administrator contract"). Consequently, these claims are barred by res judicata.

**E. King's retaliation claims are barred by res judicata.**

King alleges that after filing grievances and an EEOC charge, LISD retaliated by reducing her pay, switching the source of her salary, changing her employment status to

at-will, and terminating her administrator contract rather than placing her in a different administrator role. Dkt. No. 20 at 22, 36, 39. She also alleges that LISD retaliated by failing to timely provide her last paycheck. *Id.* at 37.

As discussed above, in *King I*, the undersigned addressed "King's apparent allegation that LISD retaliated by terminating her administrator contract and firing her in May 2024," for filing grievances, and determined that King's claim should be dismissed because she was not properly certified. *King I*, 2025 WL 2994741, at *20–21. "Moreover, King declined to sign the 2023-24 term teacher contract, so LISD had no contract to renew at the end of the year, resulting in King becoming an at-will employee." *Id.* at *21. Because the Court considered and dismissed this claim in *King I*, it is barred by res judicata. *See King I*, 2025 WL 2994741, at *22 (determining that "King has not demonstrated that LISD would have continued her employment or would not have otherwise engaged in the allegedly retaliatory conduct but for her protected activity"). As to King's allegations surrounding her pay reduction, the change in her status to an at-will employee, and the source of her salary, these claims are based on events forming the basis of her claims in *King I*. *See King I*, 2025 WL 2994741, at *13–16, *19. That is, King either did assert these claims, or she should have, and they are barred by res judicata. *See Davis*, 383 F.3d at 314.

King has also not stated a claim with respect to her new allegation that LISD retaliated by withholding her paycheck for over 60 days. "Under Title VII, [King] must prove that [LISD] subjected her to an 'adverse employment action.'" *Robin v. City of Frisco*, No. 4:16-CV-00576, 2017 WL 5483883, at *5 (E.D. Tex. Nov. 15, 2017)

(quoting *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014)). "[A] delay in receiving one's paycheck fails to constitute an adverse employment action, and is instead, a 'minor inconvenience' not subject to the discrimination statutes." *Mitchell v. DeJoy*, No. 113CV00718MACZJH, 2022 WL 17350936, at *29 (E.D. Tex. Oct. 24, 2022) (quoting *Harris v. Fort Bend ISD*, No. H-09-2984, 2011 WL 1100235, at *10 (S.D. Tex. Mar. 22, 2011)), *R. & R. adopted by* 2022 WL 17348166 (E.D. Tex. Nov. 29, 2022); *see Hamilton v. Dallas Cnty.*, 79 F.4th 494, 497 (5th Cir. 2023) (holding that for Title VII claims, a materially adverse action is one related to the "hiring, firing, compensation, or the 'terms, conditions, or privileges' of [plaintiff's] employment"); *Mylett v. City of Corpus Christi*, 97 F. App'x 473, 475 (5th Cir. 2004) (per curiam) (observing that "[a] delay in promotion is not an adverse employment action where any increase in pay, benefits, and seniority are awarded retroactively").

**F. King's FLSA claim is barred by res judicata, and she fails to state a claim.**

King references the FLSA in her amended complaint, but she does not cite any specific provision, nor does she expand upon her allegations for this claim. Dkt. No. 20 at 13.[3] It appears, however, that this claim rests upon similar allegations forming the basis of her Equal Pay Act claim in *King I*. *See King I*, 2025 WL 2994741, at *15 (discussing King's assertion "that LISD continued paying Tom Thomas a principal salary despite his demotion to assistant principal but claims LISD refused her the same courtesy"); Dkt. No. 20 at 23–24 (complaining that Thomas was paid more than King as

[3] This claim appears to be based on King's assertion that she experienced "wage discrimination." Dkt. No. 20 at 13–14, 22–24.

an assistant principal). Accordingly, to the extent King intends to assert a claim under the FLSA, it is barred by res judicata. Moreover, this claim should be dismissed because King does not attempt to provide any facts or explain with any specificity how LISD violated the FLSA. *See* Dkt. No. 20 at 13.

**G. King's claim under the Texas Whistleblower Act is barred by res judicata, and she fails to state a claim.**

King cites Chapter 271 of the Texas Whistleblower Act in her amended complaint. Dkt. No. 20 at 13. It appears that this claim is based on King's allegation that LISD retaliated after she filed grievances in April 2024. *Id.* at 27 (stating that on "April 4, 2024, Plaintiff filed a LISD local Civil Right VII Complaint" and on "April 25, 2024, Plaintiff filed a local Whistleblower Complaint" (citing Dkt. Nos. 20-3, 20-4)); 33-1 at 22–23 (complaining that King filed whistleblower complaints in April 2024). In her April 2024 grievances, King complained to LISD that, among other things, she was wrongfully removed from her position and placed on administrative leave. *See* Dkt. Nos. 20-3 at 71–74, 20-4 at 2–5. The undersigned previously considered King's retaliation claims based on these internal grievances. *See King I*, 2025 WL 2994741, at *20 (considering King's April 2024 internal grievances in establishing causation for retaliation claim). Thus, this claim is barred by res judicata.

In addition, King's internal grievances to LISD cannot form the basis of a claim under the Texas Whistleblower Act. The Act provides that "[a] state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation

of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." Tex. Gov't Code § 554.002(a). To recover under the Act, a plaintiff must show: "(1) a good faith report of a violation of law; (2) that the report was made to an appropriate law enforcement authority; and (3) show a suspension or termination of employment, or other adverse personnel action, as a result of the report." *Serna v. City of San Antonio*, 244 F.3d 479, 482 (5th Cir. 2001). Concerning the second element, "[a]n appropriate law enforcement authority is a part of a state entity that the employee in good faith believes is authorized (1) to regulate under or to enforce the allegedly violated law, or (2) to investigate or prosecute a violation of criminal law." *Univ. of Hous. v. Barth*, 403 S.W.3d 851, 857 (Tex. 2013) (citing Tex. Gov't Code § 554.002(b)). The Texas Supreme Court has explained that "purely internal reports untethered to the Act's undeniable focus on law enforcement—those who either make the law or pursue those who break the law—fall short." *Univ. of Tex. Sw. Med. Ctr. at Dall. v. Gentilello*, 398 S.W.3d 680, 682 (Tex. 2013). Rather, an entity "must have authority to enforce, investigate, or prosecute violations of law against third parties outside of the entity itself, or it must have authority to promulgate regulations governing the conduct of such third parties." *Id.* at 686. "Authority of the entity to enforce legal requirements or regulate conduct within the entity itself is insufficient to confer law-enforcement authority status." *Id.*

"In the context of Whistleblower Act claims against school districts, the Supreme Court of Texas has held that complaints to school district officials did not suffice as complaints to a 'law enforcement authority' under the Act." *De Valentino v. Hous.*

*Indep. Sch. Dist.*, No. CV H-18-0393, 2018 WL 1756732, at *4 (S.D. Tex. Apr. 12, 2018) (quoting *Canutillo Indep. Sch. Dist. v. Farran*, 409 S.W.3d 653, 655 (Tex. 2013)); *see Farran*, 409 S.W.3d at 655 (holding that internal "complaints to the school board, superintendents, and internal auditor were not good-faith complaints of a violation of law to a 'law enforcement authority' under the Whistleblower Act" because "[t]here [was] no evidence that these officials had authority to enforce the allegedly violated laws outside of the institution itself, against third parties generally").

King's grievances to LISD are insufficient to invoke the protection of the Whistleblower Act. Thus, the district judge should dismiss this claim because it is (1) barred by res judicata, and (2) factually insufficient even if it isn't barred.

**H. King's claim under Texas Labor Code § 207.044 is barred by res judicata, and she fails to state a claim under § 61.014.**

King claims that LISD violated Texas Labor Code § 207.044 because she was unable to obtain unemployment benefits when LISD represented that she "was terminated for misconduct connected to work." Dkt. No. 20 at 37.[4] King relied on the same allegations to support her defamation claim in *King I*. *See King I*, 2025 WL 2994741, at *25 (noting that "[f]or the first time in her cross-MSJ, King contends that Defendants defamed her by reporting to Texas Workforce Commission (TWC) that she . . . violated LISD policy through misconduct" (brackets omitted)); *see id.* (explaining that King's

[4] LISD incorrectly asserts that King does not cite a specific provision of the Labor Code. Dkt. No. 26 at 27; *see* Dkt. No. 20 at 30, 37.

defamation claim was not properly before the Court, but in any event, it should be dismissed). Thus, it is barred by res judicata.

In addition, King cites Chapter 61 of the Texas Labor Code, also known as the Payday Law. Dkt. No. 20 at 37. "This statutory scheme allows employees who have been denied wages to file wage claims with the Texas Workforce Commission, but it does not create a private right of action." *Vargas v. Salazar*, No. 4:23-CV-04267, 2024 WL 4804091, at *2 (S.D. Tex. Nov. 1, 2024), *R. & R. adopted by* 2024 WL 4804065 (S.D. Tex. Nov. 15, 2024); *see id.* (discussing that "[a]n employee asserting a claim pursuant to the Payday Law may choose to either file an administrative claim with the TWC under the Payday Law or a common law breach of contract claim in court" (quoting *Byun v. Hong*, 641 S.W.3d 821, 829 (Tex. App.—Tyler 2022, no pet.))). Because there is no private right of action, King cannot bring this claim.

Accordingly, King's claims under the Texas Labor Code should be dismissed.

**I. King's claims under the Texas Penal Code and Human Resources Code should be dismissed.**

King cites Texas Penal Code § 37.09, asserting that an LISD official improperly withheld "documents after the Attorney General had declared all information must be disclosed." Dkt. No. 20 at 26, 45. "As several Texas and federal courts have noted, the Texas Penal Code does not create a private right of action." *Luna v. Bank of Am. NA*, No. 3:15-CV-475-L-BH, 2015 WL 11120875, at *9 (N.D. Tex. Nov. 9, 2015) (collecting cases), *R. & R. adopted by* 2016 WL 158128 (N.D. Tex. Jan. 12, 2016). This claim must therefore be dismissed.

In addition, King cites Texas Human Resources Code § 36.002. Dkt. No. 20 at 13. "Section 36.002 of the [Texas Medicaid Fraud Prevention Act]"—the provision that King cites—"details a number of different 'Unlawful Acts' related to false, fraudulent, or misleading representations and claims made in relation to the Texas Medicaid program." *U.S. ex rel. Williams v. McKesson Corp.*, No. 3:12-CV-0371-B, 2014 WL 3353247, at *4 n.4 (N.D. Tex. July 9, 2014) (citing Tex. Hum. Res. Code § 36.002). King includes no factual basis for this claim, and it is unclear how it applies in this case. *See* Dkt. No. 20 at 13. This claim should also be dismissed.

**J. King's claims under the First and Fifth Amendments are barred by res judicata, and she fails to state a claim.**

Liberally construing King's allegations, she appears to assert First Amendment retaliation claims based on her June 26, 2023 grievance, her initial refusal to resign from the principal position, and her speech in connection with a June 15, 2023 LISD board meeting. Dkt. No. 20 at 21, 45. These same events formed the basis of King's retaliation claims in her first lawsuit. *See King I*, 2025 WL 2994741, at *5. Her claims are therefore barred by res judicata because she could and should have brought them in her first lawsuit.

In addition, King has not alleged sufficient facts to state a claim. "A claim of First Amendment retaliation has four elements: (1) The plaintiff suffered an adverse employment decision; (2) h[er] speech involved a matter of public concern; (3) h[er] interest in speaking outweighed the governmental defendant's interest in promoting efficiency; and (4) the protected speech motivated the defendant's conduct." *Land v.*

*Dietz*, 276 F. App'x 384, 387 (5th Cir. 2008). King's lack of supporting facts warrants dismissal of this claim. *See, e.g.*, Dkt. No. 20 at 21 (stating that "because she exercised her freedom of speech [by filing a grievance], [LISD] terminated her administrative term contract" but detailing no facts for why she believes her grievance constituted protected speech or was a matter of public concern), 45 (alleging that "Plaintiff exercised the 1st Amendment at LISD Board Meeting – freedom of speech" but including no details regarding statements that King made at the meeting or explaining why she believes any adverse employment decision was motivated by her speech). These claims are subject to dismissal because King's allegations are insufficient.

Finally, King attempts to assert a due process claim based on the termination of her administrator contract and employment. Dkt. No. 20 at 43. As explained above, the undersigned considered King's retaliation claims raised in her cross-MSJ concerning the termination of her administrator contract and employment. *See King I*, 2025 WL 2994741, at *21 (determining that King's retaliation claim must fail because King declined to sign a teacher contract, so LISD had no contract to renew at the end of the year, resulting in King becoming an at-will employee). Thus, King's due process claim is barred by res judicata.

Moreover, King has not stated a due process violation based on the board voiding her administrator contract. "To show a due process violation in the public employment context, the plaintiff must first show that she had a legally recognized property interest at stake." *Lollar v. Baker*, 196 F.3d 603, 607 (5th Cir. 1999). "A public employee has a property interest in her job if she has a legitimate claim of entitlement to it, a claim which

would limit the employer's ability to terminate the employment." *Johnson v. Sw. Miss. Reg'l Med. Ctr.*, 878 F.2d 856, 858 (5th Cir. 1989). "A claim of entitlement to job tenure may be created directly by state statute or by a written contract, or by a 'mutually explicit understanding' enforceable under state law as an implied contract." *Id.*

The Fifth Circuit has held that when a teacher's contract and employment is terminated due to a lapsed certification, there is no property right in continued employment, no accompanying procedural due process rights, and no entitlement to a pre-termination hearing. *Nunez v. Simms*, 341 F.3d 385, 391 (5th Cir. 2003). Indeed, under that circumstance, a plaintiff would have known "at the time she entered into the contract, or should have known from the language in the contract and the provisions of Texas law, that the contract gave her no right to continued employment while she remained uncertified when her certificate expired by its own terms." *Id.*; *see Montez v. S. San Antonio Indep. Sch. Dist.*, 817 F.2d 1124, 1126 (5th Cir. 1987) (holding that an uncertified teacher had no property right to continued employment under a continuing contract of employment because Texas law required the teacher to be certified to be entitled to contract).

Further, "when the state provides an explicit and formal policy governing entitlement to a job, informal and customary understandings cannot create a property interest in the face of the formal rules." *Watson v. N. Panola Sch. Dist.*, 188 F. App'x 291, 295 (5th Cir. 2006) (per curiam) (citation omitted) (holding that when school board did not approve plaintiff's hiring as required by state law, there was no valid employment relationship, so plaintiff had no property interest and was not entitled to a hearing); *see*

*Martinez v. Donna Indep. Sch. Dist.*, No. CV M-03-377, 2008 WL 11451905, at *11 (S.D. Tex. Jan. 8, 2008) ("[W]hen a Texas educator is not employed under a valid contract, the employee has no constitutionally-protected property right to continued employment.").

King had no entitlement to her administrator contract because, by her own admission, she was never certified to be a principal—the position she was offered. Dkt. No. 20 at 14. "To earn a principal certificate issued by the State Board of Educator Certification, Texas law requires an educator to complete an approved principal preparation program and pass the appropriate exam." *Rascon v. Perryton Indep. Sch. Dist.*, No. 2:21-CV-068-Z-BR, 2022 WL 3578257, at *5 (N.D. Tex. Aug. 19, 2022) (citing 19 Tex. Admin. Code § 241.20)); *see* Tex. Educ. Code §§ 21.003(a), 21.0031(a)–(b). And LISD afforded King an opportunity to pass the principal certification exam to keep her administrator contract, but she failed the exam. Dkt. No. 20 at 21; 20-4 at 24–26; *see Frazier v. Garrison I.S.D.*, 980 F.2d 1514, 1530 (5th Cir. 1993) (holding that teachers whose certificates were revoked were afforded due process when they were given "more than one opportunity to pass the [required certification test], and . . . there were procedures in place that afforded the [t]eachers the opportunity to appeal the revocation of their certification"). King has not identified any authority, and the undersigned can find none, that suggests that a public employee who is not and has never been properly certified has a property interest in her administrator contract. *See Watson*, 188 F. App'x at 295 ("Without a valid employment relationship, [plaintiff] has no property interest.").

As to King's termination weeks after her contract was voided, she has not stated a due process claim. "It is well-settled that Texas is an at-will employment state and that, absent an express agreement to the contrary, employment may be terminated at any time by either party with or without cause." *McDonald v. City of Corinth*, 102 F.3d 152, 156 (5th Cir. 1996). "An at-will employee is not entitled to procedural due process in connection with h[er] termination." *Bridges v. Methodist Hosp.*, No. 4:23-CV-1699, 2024 WL 4354816, at *6 (S.D. Tex. Sep. 30, 2024) (citing *McDonald*, 102 F.3d at 155), *aff'd*, No. 24-20483, 2025 WL 1693074 (5th Cir. June 17, 2025).

King admits that she was an at-will employee when LISD terminated her employment. *See* Dkt. No. 20 at 27 (acknowledging she became an at-will employee on May 8, 2024, because she did not sign a teacher's contract, and she was subsequently terminated on May 24). Thus, she cannot state a due process claim based on her termination.

Based on the foregoing, the undersigned recommends dismissal of King's First and Fifth Amendment claims.

**6. The undersigned recommends that the district judge grant LISD's motion to dismiss and dismiss King's amended complaint and all claims therein.**

In conclusion, the undersigned recommends that the district judge: (1) deny as moot LISD's first motion to dismiss, Dkt. No. 14; (2) grant LISD's second motion to dismiss, Dkt. No. 25; (3) dismiss King's state-law tort claims without prejudice under Rule 12(b)(1); and (4) dismiss all other claims with prejudice under Rule 12(b)(6). The undersigned further recommends that the motions for summary judgment and King's

motion for leave to file a supplement to her motion be denied as moot. Dkt. Nos. 45, 55 66.

**7. The parties have a right to object.**

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: July 23, 2026.

Amy Burch

**AMANDA 'AMY' R. BURCH**
**UNITED STATES MAGISTRATE JUDGE**